# Exhibit A

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION



Case Name:    **Reliant Life Sciences, LLC v AGC Biologics, et al**
Case Number:   **218-2022-CV-00202**

Date Complaint Filed: March 15, 2022
A Complaint has been filed against AGC Biologics; Daigle Computer Systems, Inc. in this Court. A copy of the Complaint is attached.

### The Court ORDERS that ON OR BEFORE:

| | |
|---|---|
| May 05, 2022 | Reliant Life Sciences, LLC shall have this Summons and the attached Complaint served upon AGC Biologics; Daigle Computer Systems, Inc. by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| May 26, 2022 | Reliant Life Sciences, LLC shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | AGC Biologics; Daigle Computer Systems, Inc. must electronically file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to AGC Biologics; Daigle Computer Systems, Inc.:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

| | |
|---|---|
| Jennifer P. Lyon, ESQ | Sheehan Phinney Bass & Green PA 1000 Elm St 17th Fl PO Box 3701 Manchester NH  03105 |
| James P. Harris, ESQ | Sheehan Phinney Bass & Green PA 1000 Elm Street PO Box 3701 Manchester NH  03105-3701 |
| AGC Biologics | 21511 23rd Drive SE Bothell WA  98021 |
| Daigle Computer Systems, Inc. | 2043 Encino Vista St San Antonio TX  78259 |

BY ORDER OF THE COURT

March 21, 2022

(126987)

Jennifer M. Haggar
Clerk of Court

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:     **Reliant Life Sciences, LLC v AGC Biologics, et al**
Case Number:   **218-2022-CV-00202**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Rockingham Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process.  Click Register and follow the prompts.

2. After you register, click Start Now.  Select **Rockingham Superior Court** as the location.

3. Select "I am filing into an existing case".  Enter **218-2022-CV-00202** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

Filed
File Date: 3/15/2022 1:56 PM
Rockingham Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY, SS                              SUPERIOR COURT

RELIANT LIFE SCIENCES, LLC
22 Roulston Road, Bldg. B
Windham, NH 03087

v.

AGC BIOLOGICS
21511 23rd Drive SE
Bothell, Washington 98021

and

DAIGLE COMPUTER SYSTEMS, INC.
2403 Encino Vis
San Antonio, TX 78259

218-2022-CV-00202

Docket No. _____

**PLAINTIFF'S COMPLAINT**

NOW COMES Plaintiff, Reliant Life Sciences, LLC ("Reliant"), by and through its

attorneys, Sheehan Phinney Bass & Green, P.A., and submits the following complaint.

Parties, Jurisdiction and Venue

1.    Reliant Life Sciences, LLC ("Reliant") is a New Hampshire limited liability company

with a principal place of business located at 22 Roulston Road, Building B., Windham, New

Hampshire.

2.    Defendant AGC Biologics ("AGC") is a Washington corporation with a principal place

of business at 21511 23rd Drive SE, Bothell, Washington.

1

P0193478

3.  Defendant Daigle Systems, Inc., with president, Henry Daigle (collectively "Daigle"), is a Texas corporation with principal place of business at 2043 Encino Vista St., San Antonio, TX 78259.

4.  The Court has subject matter jurisdiction over this matter pursuant to RSA 491:7.

5.  The Court has personal jurisdiction over AGC and Daigle (collectively "Defendants") consistent with RSA 510:4 because Defendants contractually agreed to the exclusive jurisdiction of Rockingham County, New Hampshire[1],  the harms cause by Defendants' actions were felt by Plaintiff in New Hampshire, and the acts complained herein occurred in New Hampshire.

6.  Venue is proper in this Court pursuant to RSA 507:9 because Plaintiff's principal place of business is in Windham, a town seated in Rockingham County, New Hampshire.

Facts Common to All Counts

7.  Reliant is a staffing company that arranges for consultants to fill vacancies for discrete projects in biotechnology, medical device, and pharmaceutical companies across the country. The client companies pay Reliant a fee for services rendered by the consultants.

8.  The staffing business necessitates that Reliant cultivate relationships with two broad categories of constituents. First, Reliant develops relationships with consultants who are willing to take temporary assignments and are qualified to provide services in the specializations required by Reliant's clients.  At the same time, Reliant develops relationships with biotechnology, medical device, and pharmaceutical companies that have temporary vacancies to fill. These relationships are vital to the ongoing business of Reliant in order to maintain sufficient supply and demand for the staffing services it provides.

---

[1] The contract with AGC contains an error which denotes Rockingham County, New York instead of New Hampshire. AGC and Reliant intended to consent to the jurisdiction of Rockingham County, New Hampshire.

2

9.  Reliant enters into contracts with the consultants in which the consultants promise to provide services to a particular company on specific dates and Reliant simultaneously enters into contracts with the client company, which agrees to accept services from the consultants on the same dates.

10. Defendant AGC is in the business of pharmaceutical research and is one such company with which Reliant filled temporary vacancies.

11. Defendant Daigle is in the business of providing consulting services and is one such consultant with which Reliant coordinated for a placement.

**AGC's Contract with Reliant**

12. On November 2, 2021, AGC signed a Master Service Agreement ("MSA") with Reliant.

13. At the time the MSA was signed, AGC and Reliant were in the process of onboarding Reliant's consultant, Daigle to provide services to AGC.

14. On October 15, 2021, prior to AGC's signing of the Agreement, Reliant sent to AGC the Agreement along with the Statement of Services ("SOS") for the work Daigle would perform (the "Project").

15. Pursuant to Paragraph 2 of the MSA, any Reliant consultant working at AGC would submit a weekly timesheet to AGC and Reliant reflecting the hours worked and any reasonable expenses occurred ("Timesheet").  AGC would then have five days to object to the Timesheet.  If AGC did not raise objections, according to the signed MSA, AGC "shall be deemed to have affirmatively approved the information contained on the Timesheet and thereby commit to make payment for all hours and expenses."  Further, if AGC did not make an objection within five days, "any disputes or objections to the contents of the Timesheet . . . are waived [by AGC]."

3

16. Paragraph 2 of the MSA also describes the agreement between AGC and Reliant as to billing and collection methods. Pursuant to the parties' agreement, Reliant generates an invoice to AGC based on the approved Timesheet. AGC was required to pay all invoices within forty-five days of the invoice, with a 1.5% per month interest rate accruing on all overdue amounts. AGC also agreed to "reimburse Reliant for all costs, including reasonable attorneys' fees, incurred seeking collection of overdue amounts."

17. The MSA contains a Restrictive Covenant in Paragraph 3, which reads, in part:

> Client agrees that engagements are made with the understanding that, during the term of a Consultant's Assignment and for a period of one (1) year thereafter, neither Client nor any of Client's divisions or subsidiaries will solicit, directly or indirectly, Consultant or encourage Consultant to cease his/her relationship with Reliant unless Client pays Reliant, as liquidated damages, an amount equal to fifteen percent (15%) of the Consultant's annual billable rate (based on 2,000 hours at the hourly rate set forth on the applicable SOS or the last SOS Client signed). Payment is due within 45 days of the hiring or contracting with the Consultant.

18. The MSA, Paragraph 4, also required that either party must give sixty days' written notice be given to terminate the MSA, and upon termination, Reliant would send a final invoice to AGC for all unbilled work through the date of termination. AGC further agreed that "Termination of [the MSA] shall not relieve [AGC] of its obligations to pay for all such fees and expenses."

19. On October 17, 2021, AGC responded to an email from Reliance indicating AGC's acceptance of the Agreement and the SOS and specifically directed Daigle to commence work for AGC. In that email, AGC also indicated that it would send the signed Agreement and SOS to Reliant.

P0193478

**Daigle's Contract with Reliant**

20. On September 28, 2021, Daigle signed an Independent Subcontractor Agreement with Reliant ("Agreement").

21. On the same date, Daigle signed a Statement of Work ("SOW") memorializing the agreement for Daigle to perform services for the Project at AGC.

22. Daigle and Reliant estimated the Project would last one year, commencing in early October 2021.

23. Pursuant to Paragraph 2 of the Agreement, Reliant would pay Daigle based on the terms and rates stated in the SOW, and would pay Daigle according to the hours submitted each week on the Timesheet, approved by AGC.

24. The agreement contains a Restrictive Covenant in Paragraph 3, which reads, in part:

> Subcontractor agrees that during the term of this Assignment and for a period of one (1) year thereafter, neither Subcontractor nor any of Subcontractor's divisions, subsidiaries, affiliates, employees or agents will, either directly or indirectly, for any Client of Reliant for whom Subcontractor has performed Services or about whom Subcontractor learns of an opportunity to perform Services, do any of the following: solicit, attempt to solicit, accept employment from the Client or opportunity, provide Services to or do business with the Client or opportunity that is competitive with Reliant, persuade the Client or opportunity to curtail or limit dealings with Reliant, advise the Client or opportunity to obtain Services from anyone other than Reliant, or otherwise usurp business with the Client or opportunity introduced to Subcontractor by Reliant. If Subcontractor violates any part of this paragraph, it will pay to Reliant, for each occurrence, the sum of $35,000.00 as liquidated damages. The Parties agree that the damages that Reliant may suffer as a result of Subcontractor's breach of this paragraph are difficult to quantify, that some of the harm to Reliant would be irreparable, and that the amount stated herein is not a penalty but is a reasonable estimate of the harm Reliant would suffer.

P0193478

25. Pursuant to Paragraph 4 of the Agreement, the terms of the Agreement remained in full force for one year, and either party could terminate the Agreement with sixty days' written notice.

**Daigle's brief employment at AGC as a Reliant consultant**

26. Relying on AGC's acceptance email of October 17, 2021 and explicit direction to commence work, Daigle began work for AGC on November 1, 2021.

27. AGC subsequently approved Daigle's first week's Timesheet representing hours performed by Daigle for AGC through November 8, 2021. Reliant accepted the Timesheet and issued an invoice to AGC for Daigle's first week of work.

28. On November 15, 2021, Daigle submitted a second Timesheet representing further hours performed by Daigle for AGC. That same day, AGC requested that he modify the second Timesheet.

29. Later still on November 15, 2021, Daigle resubmitted the second Timesheet, and without rejection from AGC, Reliant subsequently accepted it and issued an invoice to AGC.

30. During Daigle's second week of work, AGC directed that Daigle stop work on the Project. Reliant honored AGC's request and Reliant requested that Daigle stop work.

31. AGC subsequently cut off substantive communications with Reliant.

32. AGC never paid Reliant for the services Daigle rendered to AGC between November 1 and November 15, 2021.

**Daigle's subsequent employment at AGC without Reliant**

33. After AGC instructed that Daigle cease work through Reliant, AGC made other arrangements with Daigle through another staffing agency to employ Daigle for the same services he was providing on the Project as a Reliant consultant.

6

P0193478

34. Upon information and belief, AGC solicited, directly or indirectly, Daigle or encouraged Daigle to cease his relationship with Reliant, in direct violation the MSA.

35. Upon information and belief, Daigle solicited, directly or indirectly, and accepted the opportunity to provide services to AGC, effectively bypassing Reliant and usurping the business for which Reliant had introduced AGC to Daigle, all in direct violation of the Agreement.

## Count I: Breach of Contract
### (AGC)

36. Plaintiff incorporates the allegations of all other paragraphs as if set forth fully herein.

37. Reliant and AGC entered into a valid and binding contract, which was memorialized in the MSA signed by AGC.

38. Reliant fully performed its obligations under the parties' contract.

39. In the contract, AGC promised, among other things, not to solicit Daigle, directly or indirectly, or encourage Daigle to end his relationship with Reliant.

40. AGC's promises were important and material to the parties' contract.

41. AGC has breached its promises in the parties' contract, including those promises identified above.

42. AGC's breaches have directly and proximately caused Reliant to suffer damages in an amount to be proven at trial and within the jurisdictional limits of this Court.

## Count II: Breach of Contract
### (Daigle)

43. Plaintiff incorporates the allegations of all other paragraphs as if set forth fully herein.

44. Reliant and Daigle entered into a valid and binding contract, which was memorialized in the Agreement signed by Daigle.

45. Reliant fully performed its obligations under the parties' contract.

7

46. In the contract, Daigle promised, among other things, not to solicit or accept employment from AGC, provide services to AGC, or otherwise usurp business opportunities from Reliant.

47. Daigle's promises were important and material to the parties' contract.

48. Daigle has breached his promises in the parties' contract, including those promises identified above.

49. Daigle's breaches have directly and proximately caused Reliant to suffer damages in an amount to be proven at trial and within the jurisdictional limits of this Court.

## Count III: Interference with Contract
### (AGC)

50. Plaintiff incorporates the allegations of all other paragraphs as if set forth fully herein.

51. Reliant had a contract with Daigle in the form of the Agreement signed by Daigle.

52. Included in the contract between Reliant and Daigle was the restrictive covenant to refrain from soliciting or accepting employment from AGC, provide services to AGC, or otherwise usurp business opportunities from Reliant.

53. AGC knew of the contractual relationships between Reliant and Daigle, including the promises contained therein.

54. AGC intentionally and improperly interfered with Reliant's relationship with Daigle by inducing him to breach his promises to Reliant.

55. AGC's conduct in this regard directly and proximately caused Reliant to suffer damages in an amount to be proven at trial and within the jurisdictional limits of this Court.

## Count IV: Interference with Contract
### (Daigle)

56. Plaintiff incorporates the allegations of all other paragraphs as if set forth fully herein.

57. Reliant had a contract with AGC in the form of the MSA signed by AGC.

8

58. Included in the contract between Reliant and AGC was the promise to refrain from soliciting Daigle, directly or indirectly, or encourage Daigle to end his relationship with Reliant.

59. Daigle knew of the contractual relationships between Reliant and AGC, including the promises contained therein.

60. Daigle intentionally and improperly interfered with Reliant's relationship with AGC and by inducing it to breach its promises to Reliant.

61. Daigle's conduct in this regard directly and proximately caused Reliant to suffer damages in an amount to be proven at trial and within the jurisdictional limits of this Court.

## Count V: Civil Conspiracy
### (Defendants)

62. Plaintiff incorporates the allegations of all other paragraphs as if set forth fully herein.

63. The Defendants, each and in combination, acted by concerted action to accomplish an unlawful purpose or to accomplish a purpose not itself unlawful by unlawful means, the disruption of Plaintiff's business and engaging in unfair competition.

64. The Defendants, each and in combination, acted in unison and pursuant to a common design or agreement to commit a wrongful act upon Plaintiff.

65. The Defendants engaged in overt acts, outlined above, in furtherance of their agreement.

66. The Defendants' acting in concert makes each jointly and severally liable for the harms suffered by Plaintiff.

67. The co-conspirators have caused Plaintiff to suffer damages in an amount to be proven at trial and within the jurisdictional limits of this Court.

## Count VI: RSA 358-A
### (Defendants)

68. Plaintiff incorporates the allegations of all other paragraphs as if set forth fully herein.

9

69. The conduct of the Defendants constitutes transactions falling within the provisions of the New Hampshire Consumer Protection Act, RSA 358-A.

70. The Defendants violated RSA 358-A by, among other things, concealing their actions from Reliant, misleading Reliant to believe that the Project was terminated and that Daigle was no longer performing consulting services for AGC, and other unfair and deceptive activities prohibited by law. See Barrows v. Boles, 141 N.H. 382, 390 (1996) (RSA 358-A prohibits "objectional conduct [that would] attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."); see also State v. Moran, 151 N.H. 450, 454 (2004) "[I]t would be harmful for commerce in New Hampshire to condone such unethical and unscrupulous activity.").

71. The Defendants' violations of RSA 358-A were done willfully and knowingly thereby entitling Plaintiff to an award of treble damages in addition to all attorneys' fees, costs, and expenses.

72. The Defendants' conduct proximately caused Plaintiff to suffer damages in an amount to be proven at trial and within the jurisdictional limits of this Court.

WHEREFORE, Reliant respectfully requests:

A.  An award of damages against Defendants; and

B.  For such further and additional relief as the Court deems necessary.

Respectfully submitted,

Reliant Life Sciences, LLC

By its attorneys,

Sheehan Phinney Bass & Green, P.A.

10

Dated: March 15, 2022                    By: ___/s/ Jennifer P. Lyon_____

                                    James P. Harris (# 15336)
                                    Jennifer P. Lyon (#274086)
                                    1000 Elm Street
                                    P.O. Box 3701
                                    Manchester, NH 03105-3701
                                    603-627-8255
                                    603-627-8394
                                    jharris@sheehan.com
                                    jlyon@sheehan.com

P0193478

**Merrimack County Sheriff's Office**
DAVID A. CROFT
333 Daniel Webster Hwy
Boscawen, NH 03303
Phone: 603-796-6600

AGC BIOLOGICS
21511 23RD DR SE
BOTHELL, WA 98021

AFFIDAVIT OF SERVICE

MERRIMACK, SS.                                  3 25/22

    I, SERGEANT STACIE FISKE, this date at 12:50 a.m./p.m., summoned the
within named defendant AGC BIOLOGICS as within commanded by leaving at the
office of David Scanlan, Secretary of State of New Hampshire, its true and
lawful Attorney for the service of process under, and by virtue of, Chapter
510:4, New Hampshire Revised Statutes Annotated, as amended, a true and
attested copy of this Summons and Complaint, and I paid the Secretary of
State ten ($10.00) dollars as his fee for accepting service.

FEES

    Service       $30.30
    Postage        1.00
    Travel        15.00
    PD to SOS     10.00
                 _____
TOTAL            $56.30


                                    _____
                                    SERGEANT STACIE FISKE
A TRUE COPY ATTEST:                 Merrimack County Sheriff's Office

_____
STACIE FISKE, DEPUTY
Merrimack County Sheriff's Office

P0193478