UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Reliant Life Sciences, LLC

     v.                                Civil No. 22-cv-137-SE
                                          Opinion No. 2022 DNH 136
AGC Biologics, Inc. and
Daigle Computer Systems, Inc.


O R D E R

Reliant Life Sciences, LLC ("Reliant") brought suit in New Hampshire Superior Court, Rockingham County, against AGC Biologics Inc. ("AGC") and Daigle Computer Systems, Inc. Reliant, a staffing company, alleges that it arranged a consulting relationship between AGC and Daigle.[1]  Both AGC and Daigle allegedly breached their respective contracts with Reliant and eventually formed their own working relationship without Reliant's involvement. Reliant asserts contract and tort claims against both defendants arising out of the failed relationships.

AGC removed the case to this court and moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(2)

---

[1] As discussed herein, Henry Daigle owns Daigle Computer Systems, Inc. and performed work for AGC on Daigle Computer Systems, Inc.'s behalf. Because the two are effectively interchangeable for purposes of the case's factual background, the court will refer to both as "Daigle" unless otherwise necessary for clarity's sake.

for lack of personal jurisdiction.[2] Doc. no. 5. Reliant objects,
and also moves to remand the case to superior court. Doc. no.
12. Because Reliant's motion to remand is untimely and the court
lacks personal jurisdiction over AGC, the court denies Reliant's
motion to remand and grants AGC's motion to dismiss.

I. Motion to Remand

Reliant contends that the court need not address AGC's
motion to dismiss because the case must be remanded to New
Hampshire state court. A state-court defendant may remove an
action to federal court if the plaintiff could have originally
filed the action in federal court. 28 U.S.C. § 1441. In any
action involving multiple defendants, the "unanimity rule"
provides that "all defendants who have been properly joined and
served must join in or consent to the removal of the action." 28
U.S.C. § 1446(b)(2). Even though Daigle did not appear in state
court and has not yet appeared in federal court, there is no

---

[2] AGC also moves to dismiss under Federal Rule of Civil
Procedure 12(b)(6) based on a forum selection clause in its
agreement with Reliant, arguing that the clause requires Reliant
to bring its claims in New York. Because the court concludes
that it lacks personal jurisdiction over AGC, it does not
address the merits of that argument. See Sinochem Int'l Co. v.
Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007)
(noting that a court should ordinarily address jurisdictional
questions first and should not rule on the merits of a case if
it determines that it lacks jurisdiction).

dispute that it was served with the state-court action prior to removal. There is likewise no dispute that Daigle did not join in or consent to removal. Thus, Reliant argues, AGC's removal violated the unanimity rule.

AGC does not dispute that its removal violated the unanimity rule, but rather it argues that Reliant's motion to remand is untimely, and the court must deny it on that basis. Absence of unanimity as required by § 1446(b)(2) is a procedural defect that does not affect the subject matter jurisdiction of the court. Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 75 (1st Cir. 2009). "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." 28 U.S.C. § 1447(c). If a party fails to file a timely motion to remand based on failure of unanimity, it waives the objection. Esposito, 590 F.3d at 75.

In this case, AGC filed the notice of removal on April 22, 2022. Reliant filed its motion to remand on May 26, 2022, more than 30 days later. Reliant does not argue or offer any support for equitably tolling the limitations period. Therefore, Reliant's motion to remand the case is untimely under § 1447(c), and the court denies the motion on that basis.

II. Motion to Dismiss

AGC moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2). It argues that, despite Reliant's allegations to the contrary, AGC did not consent to personal jurisdiction in New Hampshire and lacks contacts with New Hampshire sufficient to establish personal jurisdiction. Reliant objects, arguing both that AGC consented to jurisdiction in New Hampshire and that it has sufficient contacts with the state to allow the court to exercise personal jurisdiction.

A. Standard of Review

When, as here, the court does not hold an evidentiary hearing on a Rule 12(b)(2) motion, the prima facie approach applies. Rodriguez-Rivera v. Allscripts HealthCare Solutions, Inc., 43 F.4th 150, 157 (1st Cir. 2022). Under the prima facie standard, the court acts "as a data collector" but not as a factfinder. Id. (quotation omitted).

As a data collector, the court takes the plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [the plaintiff's] jurisdictional claim." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). The plaintiff cannot

establish jurisdiction based on allegations in the complaint but instead "must put forward evidence of specific facts to demonstrate that jurisdiction exists." Id. The court "also consider[s] facts offered by [the defendant], to the extent that they are not disputed." Id. The plaintiff bears the burden of showing that specific personal jurisdiction exists. Rodriguez-Rivera, 43 F.4th at 160.

B. Background[3]

Reliant is a staffing company that arranges for consultants to fill vacancies for discrete projects in biotechnology, medical device, and pharmaceutical companies. It is a Delaware corporation with a principal place of business in Windham, New Hampshire.

Reliant's staffing services are generally executed through two separate contracts. It enters into a contract with a consultant in which the consultant agrees to provide services to a particular company on specific dates. Reliant simultaneously enters into a contract with a client company, which agrees to accept services from the consultant on the same dates.

This was the relationship between Reliant and defendants

_____

[3] The facts in this section are taken from AGC's and Reliant's properly supported evidentiary proffers. These facts are undisputed unless otherwise noted.

AGC (the client company) and Daigle (the consultant). AGC has its principal place of business in Bothell, Washington. Daigle is located in San Antonio, Texas. Its owner, Henry Daigle, lives in Texas. AGC and Daigle have no operations in New Hampshire.

In September 2021, AGC contacted Reliant by email about obtaining the services of Daigle to perform some consulting work. Pursuant to its usual process, Reliant entered into an Independent Subcontractor Agreement ("Subcontractor Agreement") with Daigle on September 28, 2021. The Subcontractor Agreement contained a Restrictive Covenant, which, among other things, stated that Daigle could not perform work for AGC outside of the arrangement with Reliant. The Subcontractor Agreement also provided that either party could terminate the agreement with 60 days' written notice. Also on September 28, 2021, Daigle signed a Statement of Work which memorialized the agreement for Daigle to perform services for AGC.

On October 15, 2021, Reliant emailed AGC a proposed Master Service Agreement ("MSA"). The MSA, which Reliant had signed, was an overarching agreement for Reliant to provide AGC the services of a consultant. It did not address Daigle or a specific project. The MSA contained a clause that governed any disputes arising out of the agreement (the "forum selection clause"). In the version Reliant emailed on October 15, the

forum selection clause stated that the MSA was governed by New Hampshire law, that any action pertaining to the agreement must be filed in New Hampshire, and that AGC consented to personal jurisdiction in Rockingham County, New Hampshire. AGC did not sign the October 15 version of the MSA.

Under the MSA, Reliant agreed to furnish consultants as provided in the "accompanying Statements of Services (each, 'SOS')." Doc. no. 9-3 at 4. AGC did not sign the Statement of Services. Two days later, Christine Tieskoetter of AGC sent an email back to Reliant: "We acknowledge that AGC is approving is [sic] start pending eh [sic] signed documents (MSA/SOS)." Doc. no. 9-4 at 2. For the next two weeks, Reliant and AGC negotiated by email the terms of the Statement of Services for Daigle.[4]

By November 1, 2021, AGC had still not signed either the MSA or the Statement of Services. On that date, however, Daigle began work at AGC.

That same day, Tieskoetter sent a revised version of the MSA to Reliant. The revised version changed the forum selection

---

[4] AGC asserts that the email communications were between its employees in Washington and Reliant managers who resided in Massachusetts and Arizona, which shows a lack of connection to New Hampshire. Reliant does not dispute that assertion but argues that the location of its employees is irrelevant to the personal jurisdiction analysis. Because Reliant's employees' location would not change the outcome of the court's jurisdictional analysis, the court need not resolve the dispute.

clause to state that the MSA was governed by New York (rather than New Hampshire) law and that any action pertaining to the agreement must be filed in New York (rather than New Hampshire). In addition, the revised version stated that AGC consented to personal jurisdiction in Rockingham County, New York (rather than Rockingham County, New Hampshire).[5] In addition, the revised version contained a "Prior Agreement" clause that provided: "This Agreement forms the entire agreement between Reliant and Client with respect to the matters herein. It cancels and supersedes all prior agreements and understandings with respect to the matters herein."[6] Doc. no. 5-11, ¶ 11. Both AGC and Reliant signed the revised MSA on November 2, 2021.

Henry Daigle worked at AGC in Washington until November 15, 2021, and submitted two time sheets for his work. Although Daigle worked for AGC for two weeks, AGC and Reliant unsuccessfully tried to negotiate Daigle's rate during that timeframe and did not enter into a Statement of Services for Daigle.

On November 15, 2021, Reliant told Daigle to go home and stop working for AGC. AGC paid Reliant for Daigle's services

---

[5] The parties agree that Rockingham County, New York does not exist.

[6] The MSA defines "Client" as AGC.

between November 1 and 15.[7] AGC later obtained Daigle's consulting services through a different company.

After failed settlement negotiations, Reliant filed suit on March 15, 2022, in Rockingham County, New Hampshire, alleging claims against AGC and Daigle. Reliant alleges that both AGC and Daigle breached their contracts with Reliant, that AGC and Daigle each interfered with Reliant's contract with the other, that AGC and Daigle conspired to disrupt Reliant's business and to engage in unfair competition, and that both Daigle and AGC violated New Hampshire's Consumer Protection Act, RSA chapter 358-A.

Reliant alleges in its complaint that the court has personal jurisdiction over AGC because AGC "contractually agreed to the exclusive jurisdiction of Rockingham County, New Hampshire," because Reliant suffered harm in New Hampshire, and because the acts complained of occurred in New Hampshire. Doc. no. 1-1, ¶ 5.

---

[7] Reliant alleged in its complaint that AGC did not pay for Daigle's services. AGC submitted evidence to show that it did pay Reliant for Daigle's services, and Reliant does not dispute that evidence.

C. <u>Discussion</u>

AGC moves to dismiss the claims brought against it because it did not consent to personal jurisdiction in New Hampshire, and it lacks contacts with New Hampshire to support general or specific personal jurisdiction. Reliant argues that AGC consented to personal jurisdiction in New Hampshire in the MSA and that, even if it did not, specific personal jurisdiction exists over AGC because of its contacts with the state.

1. <u>The MSA</u>

Reliant's argument that AGC consented to personal jurisdiction in New Hampshire is based on its theory that the October 15 version of the MSA is the governing agreement. But even if AGC and Reliant entered into that version of the MSA, which AGC disputes, the record evidence shows that it is not the operative agreement.

There is no dispute that AGC and Reliant signed and entered into the November 2 version of the MSA. Doc no. 5-11. That version of the MSA provides that it "cancels and supersedes all prior agreements and understandings with respect to the matters herein." <u>Id.</u>, ¶ 11. Therefore, even if AGC and Reliant entered into the October 15 version of the MSA as Reliant contends, that agreement was canceled and superseded by the November 2 version.

AGC does not consent to personal jurisdiction in New Hampshire
in the November 2 version of the MSA.[8] Thus, the court must
determine whether AGC's contacts with New Hampshire are
sufficient to establish personal jurisdiction.


### 2. Jurisdictional Analysis

When personal jurisdiction is challenged and subject matter
jurisdiction is based on diversity of citizenship, the court
"must determine whether the defendant's contacts with the state
satisfy both the state's long-arm statute as well as the Due
Process Clause of the Fourteenth Amendment." Vapotherm, Inc. v.
Santiago, 38 F.4th 252, 258 (1st Cir. 2022). New Hampshire's
long-arm statute allows personal jurisdiction over an out-of-
state defendant to the extent allowed by due process. Id.
Specific personal jurisdiction, as Reliant asserts here,
requires the plaintiff to show:

> (1)[its] claim directly arises out of or relates to
> the defendant's forum-state activities; (2) the
> defendant's contacts with the forum state represent a

---

[8] Reliant cites to documentary evidence with its objection.
Nevertheless, it argues that the court need not consider that
evidence because the court must take Reliant's allegation in the
complaint, that AGC intended to consent to the jurisdiction of
Rockingham County, New Hampshire, as true. That is not the law.
Instead, to make a prima facie showing of personal jurisdiction,
a "plaintiff must go beyond the pleadings and make affirmative
proof." Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir.
1992) (quotation omitted).

purposeful availment of the privilege of conducting
activities in that state, thus invoking the benefits
and protections of that state's laws and rendering the
defendant's involuntary presence in that state's
courts foreseeable; and (3) the exercise of
jurisdiction is ultimately reasonable.

Scottsdale Cap. Advisors Corp v. The Deal, LLC, 887 F.3d 17, 20
(1st Cir. 2018). Before the court may exercise personal
jurisdiction, the plaintiff must satisfy all three prongs of the
specific jurisdictional analysis. A Corp., 812 F.3d at 59.

### a. Relatedness

The standards for weighing relatedness under New Hampshire
law and due process are different for contract and tort claims.
Vapotherm, 38 F.4th at 258. When, as here, a plaintiff brings
both contract and tort claims, the court must address
relatedness under both standards. Id. at 259.

### i.  Contract claim

In the context of breach of contract claims, the
relatedness requirement directs the court to "ask whether the
defendant's activity in the forum state was instrumental in
either the formation of the contract or its breach." Vapotherm,
38 F.4th at 258-59 (quotation omitted). When looking at the
defendant's activity as it relates to the forum, the court
considers where the contract was signed and whether performance

of the contract was controlled from the forum state or connected
to the forum state. Id. at 259.

The undisputed facts here show that AGC's activity in New
Hampshire was not instrumental in the formation of the MSA or
its breach. No AGC employee ever came to New Hampshire for
purposes of the MSA. The parties' communications to initiate and
negotiate the relationship were by email, telephone, and virtual
meetings. Vijay Raghavan, AGC's chief financial officer, signed
the MSA on AGC's behalf in Washington. These facts do not
support a finding of relatedness in the formation of the MSA.
Vapotherm, 38 F.4th at 259 (finding no relatedness between New
Hampshire and formation of a contract where defendant, a non-New
Hampshire resident, did not sign the contract in New Hampshire).

AGC's performance of the MSA was not controlled by or
connected to New Hampshire. Reliant arranged for a consultant,
Daigle, which was located in San Antonio, Texas, to perform work
for AGC in Washington. Daigle was never in New Hampshire for
purposes of his work with AGC. Thus, performance of the contract
was not connected to New Hampshire. Vapotherm, 38 F.4th at 259
(holding that the defendant was not subject to control in or
connected to New Hampshire where the defendant merely contacted
plaintiff's "New Hampshire headquarters for general

administrative matters" while his supervisors were located in other states).

Reliant alleges that AGC breached promises in the MSA not to solicit Daigle or to encourage him to end his relationship with Reliant. As neither AGC nor Daigle were in New Hampshire at any time during the performance of their respective contracts, to the extent AGC breached the MSA, that breach did not occur in New Hampshire.

In sum, AGC's activity in New Hampshire was not instrumental in either the formation of the contract or its alleged breach. For that reason, Reliant has not met the relatedness requirement for purposes of the breach of contract claim against AGC.

### ii.   Tort claims

Reliant brought three tort claims against AGC: interference with contract, civil conspiracy, and a violation of New Hampshire's Consumer Protection Act, RSA chapter 358-A. In determining relatedness for purposes of personal jurisdiction for a tort claim, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Vapotherm, 38 F.4th at 260. As with a contract claim, the court considers "whether the tort claim arises out of or relates to

the defendant's contact with the forum." Id. (quotation and alterations omitted).

Reliant alleges that AGC interfered with the contractual relationship between Reliant and Daigle by inducing Daigle to breach the promises in their contract. It also alleges that AGC and Daigle conspired to disrupt Reliant's business and that they violated the Consumer Protection Act by concealing their actions to have Daigle work for AGC without Reliant. Reliant does not allege or argue in its objection, however, that any of the actions forming the bases for these claims occurred in New Hampshire. Instead, it appears to concede that the actions about which it complains occurred primarily in Washington or between Washington and Texas.

Reliant also argues that it can meet the relatedness prong of the personal jurisdiction analysis for its tort claims because it suffered injury in New Hampshire. However, "in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims." Vapotherm, 38 F.4th at 261 (citing cases).

Reliant's tort claims do not arise out of or relate to AGC's contacts with New Hampshire. Therefore, Reliant has not established relatedness for its tort claims against AGC.

b. Purposeful availment

Reliant's failure to demonstrate relatedness between any of its claims against AGC and AGC's contacts with New Hampshire means that this court lacks personal jurisdiction over AGC in this case. Even if Reliant had met the relatedness requirement, the court would not have personal jurisdiction over AGC because Reliant has not demonstrated purposeful availment. The purposeful availment requirement "is intended to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state." A. Corp, 812 F.3d at 60. The key elements are "voluntariness and foreseeability." Vapotherm, 38 F.4th at 261 (quotation omitted). For voluntariness, the court asks whether the defendant's contacts with the forum state were "of its own making and not based on the unilateral actions of another party or a third person." Rodriguez-Rivera, 43 F.4th at 163. For "foreseeability, the defendant's contacts in the forum state must give him notice such that he could reasonably anticipate being haled into court there." Vapotherm, 38 F.4th at 262 (quotation omitted).

In this case, AGC contacted Reliant and entered into the agreement with Reliant to have Daigle provide consulting services. Daigle is located in Texas, AGC is located in Washington, and Daigle performed work for AGC in Washington.

16

These contacts do not show that AGC voluntarily sought out a business relationship or opportunity in New Hampshire or that the agreement with Reliant put AGC on notice that it would be subject to suit in New Hampshire. Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 935 n.4 (1st Cir. 1985) (holding that the plaintiff did not establish the purposeful availment prong and noting that if "the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985))). AGC never planned to carry on its business in New Hampshire but instead intended to obtain Daigle's consulting services in Washington. See Vapotherm, 38 F.4th at 262 (finding no purposeful availment despite defendant's contacts with his employer in New Hampshire because his work was centered outside New Hampshire). Therefore, Reliant has not satisfied the purposeful availment requirement.

c. Reasonableness

Because Reliant failed to make a prima facie showing as to either relatedness or purposeful availment, the court need not determine whether exercising personal jurisdiction over AGC

would be reasonable in this case. Vapotherm, 38 F.4th at 263 (declining to address reasonableness because the plaintiff failed to make a prima facie showing as to either relatedness or purposeful availment). Reliant has not shown that AGC has sufficient contacts with New Hampshire to support personal jurisdiction. Therefore, the court grants AGC's motion to dismiss.

## Conclusion

For the foregoing reasons, Reliant's motion to remand (document no. 12) is denied. AGC's motion to dismiss (document no. 5) is granted.

The claims against AGC are dismissed without prejudice for lack of personal jurisdiction. The claims against Daigle Computer Systems, Inc. remain in this case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

October 25, 2022

cc: Counsel of record.
    Daigle Computer Systems, Inc.