**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Reliant Life Sciences, LLC

        v.                              Case No. 1:22-cv-137-SE

AGC Biologics, Inc. and
Daigle Computer Systems, Inc.


**REPORT AND RECOMMENDATION**

Reliant Life Sciences, LLC ("Reliant"), a staffing services company, filed suit against its former client, AGC Biologics, Inc. ("AGC"), and its former consultant, Daigle Computer Systems, Inc. ("Daigle"). After facilitating a working relationship between AGC and Daigle, Reliant claims that AGC and Daigle violated the terms of their respective agreements with Reliant and made related misrepresentations to continue a working relationship without Reliant. On October 25, 2022, AGC was dismissed from this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 17). Daigle, however, failed to respond to Reliant's complaint, and on November 7, 2022, the Clerk of Court entered default against it. (Doc. No. 18). Before the court for recommendation as to disposition is Reliant's motion for default judgment against Daigle (Doc. No. 19) pursuant to Federal Rule of Civil Procedure

55(b)(2).[1]  For reasons explained below, the court recommends that Reliant's motion be granted and that damages be awarded in the amount of $109,404.80.

## STANDARD OF REVIEW

When a party moves for a default judgment under Rule 55(b)(2), the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). The defaulting party is "taken to have conceded the truth of the factual allegations in the complaint." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002). Admitting the truth of the factual allegations, however, "does not admit the legal sufficiency of [the] claims." 10 James W. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013). For that reason,

---

[1] Reliant moves for default judgment under Federal Rule of Civil Procedure 55(b)(1) and claims its damages are for a sum certain, but as explained below, because Reliant seeks attorneys' fees and treble damages under the New Hampshire Consumer Protection Act, RSA 358-A, the court must analyze its motion under Federal Rule of Civil Procedure 55(b)(2). See, e.g., Trustees of Sheet Metal Workers Local Union No. 17 Ins. Fund v. Phils HVAC, Inc., No. 21-cv-10680-ADB, 2021 WL 4594925, at *2 (D. Mass. Oct. 6, 2021) (noting Plaintiffs must utilize Rule 55(b)(2) because the reasonableness of their request for attorneys' fees requires judicial review); Merullo v. Greer, No. 11-cv-116-SM, 2012 WL 832832, at *3, 5 (D.N.H. Feb. 10, 2012) (applying Rule 55(b)(2) and requiring proof of damages under RSA 358-A).

the court reviews the admitted facts in light of the elements of
the claims pleaded before entering a default judgment.  Sampson
v. Lambert, 903 F.3d 798, 805-06 (8th Cir. 2018); Neff v.
Mediation Processing Servs., LLC, No. 21-CV-310-JL, 2021 WL
7082838, at *1 (D.N.H. Sept. 27, 2021), report and
recommendation adopted, No. 21-CV-310-JL, 2021 WL 7082833
(D.N.H. Oct. 14, 2021).

**BACKGROUND**

By virtue of its default, Daigle concedes the following
facts alleged in Reliant's complaint.  Reliant, a New Hampshire
limited liability company, provides staffing services to client
companies in the biotechnology, medical device, and
pharmaceutical industries.  See Compl. (Doc. No. 7-1, ¶ 7).
These client companies enter into service agreements with
Reliant in order to utilize Reliant's consultants to fill
temporary vacancies on discrete projects.  Id. ¶¶ 8-9.  Reliant
separately enters into independent subcontractor agreements with
consultants, in which the consultants agree to provide services
to a particular client company, on behalf of Reliant, for a
specified period of time.  Id. ¶¶ 8-9.

On September 28, 2021, Reliant entered into an Independent
Subcontractor Agreement (the "Agreement") with Daigle, in which
Daigle agreed to perform certain services for Reliant's client,
AGC, in exchange for payment.  Id. ¶¶ 20-21; see also Agreement,

Ex. 1 to Aff. Of James P. Harris ("Harris Aff.") (Doc. No. 19-3).  Reliant and Daigle estimated that Daigle's work for AGC would commence in October 2021 and likely conclude one year later.  Compl. (Doc. No. 7-1, ¶ 22).  The Agreement required Reliant to pay Daigle according to terms and rates set forth in the parties' related Statement of Work and based upon Daigle's hours submitted in a weekly timesheet, subject to approval by AGC.  Id. ¶ 23.

The Agreement also prohibited Daigle from: soliciting, attempting to solicit, or accepting employment directly from AGC; doing business with AGC, or persuading AGC to curtail or limit its dealings with Reliant; or advising AGC of an opportunity to obtain Daigle's services from anyone other than Reliant.  Id. ¶ 24; see also Agreement, Ex. 1 to Harris Aff. (Doc. No. 19-3, §3).  The restrictive covenant remained in effect during the term of the Agreement and for a period of one year thereafter.  Agreement, Ex. 1 to Harris Aff. (Doc. No. 19-3, §3).  In the event Daigle violated the restrictive covenant provision, the terms of the Agreement required Daigle to pay Reliant liquidated damages in the amount of $35,000.00 per violation.  Id.

On October 17, 2021, AGC separately accepted the terms of a Master Service Agreement with Reliant and directed Daigle to commence work for AGC.  Compl. (Doc. No. 7-1, ¶¶ 19, 26).

4

Daigle began work for AGC on November 1, 2021 and submitted two timesheets for work completed through November 15, 2021.  Id. ¶¶ 26-28.  Reliant ultimately accepted both timesheets, without rejection from AGC, and issued invoices to AGC for work completed.  Id. ¶¶ 27, 29.  During Daigle's second week of work, however, AGC requested that Daigle stop work.  Id. ¶ 30. Reliant complied with AGC's request and instructed Daigle to stop work.  Id.

Yet, shortly thereafter, Daigle recommenced its work with AGC through a different staffing company.  Id. ¶ 33.  Daigle's solicitation of AGC and acceptance of an opportunity to provide services to AGC through another staffing company violated the terms of Daigle's Agreement with Reliant.  Id. ¶ 35.  Further, Daigle misled Reliant to believe that Daigle was no longer providing services to AGC on the project, when in fact, it continued to perform services for AGC through another company. Id. ¶¶ 70-71.

On March 15, 2022, Reliant initiated this action against both AGC and Daigle in New Hampshire Superior Court, and AGC removed the case to this court.  (Doc. No. 1).  Daigle was served with a copy of the summons and complaint on April 4, 2022, and Reliant filed an affidavit of service on June 22, 2022.  (Doc. No. 16).  When Daigle did not file a response within the time allowed, the Clerk of Court entered default

against it.  (Doc. No. 18).  Reliant now moves for default
judgment as to Daigle.  (Doc. No. 19).

**DISCUSSION**

Reliant brings four claims against Daigle: breach of
contract (Count II), interference with contract (Count IV),
civil conspiracy (Count V), and violation of RSA 358-A (Count
VI).  All of Reliant's claims seek damages based upon Daigle's
breach of the parties' Agreement and its related
misrepresentations.  Reliant moves for default judgment on
Counts II and VI and seeks damages in the amount of $109,404.80,
reflecting liquidated damages and attorneys' fees under the
parties' Agreement, as well as treble damages pursuant to the
New Hampshire Consumer Protection Act, RSA 358-A (the "CPA").

## I.  Jurisdiction

"[W]hen judgment is sought against a party who has failed
to plead or otherwise defend, a district court has an
affirmative duty to assure itself that it has jurisdiction over
both the subject matter and the parties." Sun Life Assur. Co.
of Canada, (U.S.) v. Conroy, 431 F. Supp. 2d 220, 224 (D.R.I.
2006).  Thus, the court must consider whether it has both
subject matter jurisdiction over this case and personal
jurisdiction over Daigle. Id.

A. <u>Subject-Matter Jurisdiction</u>

A federal court has original jurisdiction over a civil state law claim when there is diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  Here, both requirements are satisfied.  Specifically, Reliant is a citizen of New Hampshire, AGC is a citizen of Washington, and Daigle is a citizen of Texas.  <u>See</u> (Doc. No. 7-1, ¶¶ 1-3); <u>see also</u> Notice of Removal (Doc. No. 1, at 2-3).  In addition, Reliant sought monetary damages against Daigle and AGC in the amount of at least $100,500.00, which does not include Reliant's request for treble damages and attorneys' fees.  <u>See</u> Notice of Removal (Doc. No. 1, at 5).  Thus, based on this court's diversity jurisdiction, the court has subject-matter jurisdiction over the case.

B. <u>Personal Jurisdiction</u>

"This court's personal jurisdiction in state-law claims is generally coextensive with New Hampshire state courts' personal jurisdiction." Gagnon v. Gagnon, 621 F. Supp. 3d 229, 229 (D.N.H. Aug. 10, 2022) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)).  "Personal jurisdiction usually is obtained over a defendant by service of process." Id. (quoting Farm Credit Bank of Baltimore v. Ferrera-Goitia, 316 F.3d 62, 68 (1st Cir.

2003)).  Unlike subject-matter jurisdiction, defendants may
waive personal jurisdiction by either failing to raise it or
through actions indicating that they acquiesce to the court's
jurisdiction.  Vazquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 3
(1st Cir. 2014).

Reliant provided adequate proof of service as to Daigle.
(Doc. No. 16).  Further, pursuant to the terms of the Agreement
between Reliant and Daigle, Daigle expressly consented to the
personal jurisdiction of New Hampshire state courts.  See
Agreement, Ex. 1 to Harris Aff. (Doc. No. 19-3, §12).  Thus, the
court concludes it has personal jurisdiction over Daigle.

## II.  Liability

### A. Breach of Contract (Count II)

Under New Hampshire law, "a breach of contract occurs when
there is a failure without legal excuse to perform any promise
which forms the whole or part of a contract." BAE Sys. Info.
and Elecs. Sys. Integration, Inc. v. SpaceKey Components, Inc.,
941 F. Supp. 2d 197, 213 (D.N.H. 2013) (brackets omitted)
(quoting Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 668
(2013)), aff'd, 752 F.3d 72 (1st Cir. 2014).  Contracts
involving restrictive covenants, however, are disfavored under
New Hampshire law and construed narrowly.  See Syncom Indus.,
Inc. v. Wood, 155 N.H. 73, 78 (2007).  Nevertheless, a
restrictive covenant remains valid and enforceable "if the

restraint is reasonable, given the particular circumstances of the case." Id.

The reasonableness of a restrictive covenant "is a matter of law for the court to decide." Id. In determining the reasonableness of the restrictive covenant, the court must consider: "(1) whether the restraint is narrowly tailored to protect the employer's legitimate interests; (2) whether its restrictions impose an undue hardship on the employee; and (3) whether the restriction is injurious to the public interest." PC Connection, Inc. v. Sillich, No. 22-cv-524-LM, 2023 WL 3393449, at *2 (D.N.H. May 11, 2023) (citing ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 388-89 (2007)).[2]

Based on the admitted allegations, Reliant sufficiently demonstrates that Daigle breached the terms of its Agreement with Reliant. Specifically, the terms of the Agreement between Reliant and Daigle prohibited Daigle from: soliciting or attempting to solicit employment from AGC; doing business with AGC; persuading AGC to curtail or limit its dealings with Reliant; or advising AGC of an opportunity to obtain Daigle's

---

[2] Although Daigle appears to be a subcontractor of Reliant, as opposed to an employee, the court finds that the factors for consideration are applicable in both instances. See TLS Mgmt. and Mktg. Servs., LLC v. Rodriguez-Toledo, 966 F.3d 46, 49, 57-58 (1st Cir. 2020) (applying similar employer and employee restrictive covenant considerations to the parties' subcontractor agreement).

services from anyone other than Reliant.  Agreement, Ex. 1 to
Harris Aff. (Doc. No. 19-3, §3).  In exchange, Reliant connected
Daigle to AGC and enabled Daigle to provide consulting services
to AGC on a project estimated to last for one year.  Id.
Although Daigle initially performed under the terms of the
Agreement, it stopped work for AGC after two weeks, and then
shortly thereafter recommenced its work for AGC through another
staffing company.  Compl. (Doc. No. 7-1, ¶¶ 30, 33).  Where
Daigle solicited AGC and continued a working relationship with
AGC without Reliant, Daigle's conduct breached the terms of the
parties' Agreement without legal excuse.

    Because Daigle's breach involves a restrictive covenant,
the court must also consider the reasonableness of the
restrictive covenant.  First, the court finds the restraint is
necessary to protect Reliant's legitimate business interests,
including confidential information and "contacts developed
during the employment."  See Concord Orthopaedics Prof'l Ass'n
v. Forbes, 142 N.H. 440, 443 (1997).  Second, the restrictive
covenant is reasonably limited in time and space, where the
period of enforceability is the term of the Agreement and one
year thereafter and the restriction concerns only Daigle's
working relationship with AGC.  See ACAS Acquisitions, 155 N.H.
at 38 (noting that the restrictive covenant must be limited to
the scope of the employee's customer contacts); Concord

Orthopaedics, 142 N.H. at 444 (holding that a two-year duration
for a restrictive covenant is reasonable).  Third, the
restrictive covenant comports with the public interest "in the
enforcement of legally enforceable contracts . . . ." PC
Connection, Inc., 2023 WL 3393449, at *4.  Similarly, the
limited scope of the restrictive covenant does not unduly
interfere with any public interest in consumer choice.  Id.  For
these reasons, the court finds the restrictive covenant is
reasonable and enforceable.  Accordingly, where Reliant
demonstrated that Daigle breached the provision without legal
excuse, the district judge should enter default judgment against
Daigle on Reliant's breach of contract claim.

        B. Violation of RSA 358-A (Count VI)

    The CPA prohibits "any unfair method of competition or any
unfair or deceptive act or practice in the conduct of any trade
or commerce within this state." N.H. Rev. Stat. Ann. 358-A:2.
When a party complains of commercial conduct that is not
specifically delineated under the CPA, the court applies the
"rascality test" to determine whether the conduct is "covered by
the CPA." Beer v. Bennett, 160 N.H. 166, 171 (2010) (quotation
and brackets omitted).  "The test requires the plaintiff to show
that the defendant's acts attained a level of rascality that
would raise an eyebrow of someone inured to the rough and tumble
of the world of commerce." Id. (quotation omitted).

While a breach of contract, on its own, fails to state a claim under the CPA, "a defendant who induces the plaintiff to enter a contract based on a knowing misrepresentation of the promisor's intent to perform under the contract violates the Consumer Protection Act." Campbell v. CGM, LLC, No. 15-cv-088-JD, 2017 WL 78474, at *12 (D.N.H. Jan. 9, 2017) (quoting Moulton v. Bane, No. 14-cv-265-JD, 2016 WL 1091093, at *12 (D.N.H. Mar. 21, 2016)).  In addition, "misrepresentations made by a defendant in an ongoing effort to avoid performing under an agreement, when the defendant did not intend to perform, also violate the CPA." Id. (quoting Moulton, 2016 WL 1091093, at *12).

In HCC Specialty Underwriters, Inc. v. Woodbury, No. 16-cv-501-LM, 2017 WL 2389522 (D.N.H. June 1, 2017), the court denied defendants' motion to dismiss plaintiff's CPA claim based on allegations similar to those of Reliant. Id. at *3. Specifically, the court held that to the extent one defendant never intended to honor the non-competition provisions in the parties' agreement or made misrepresentations to avoid performing under the agreement, plaintiff could have a viable CPA claim. Id. As to the other defendant, the court held that allegations concerning interference with plaintiff's business relationships and good will with clients were also sufficient to avoid dismissal of plaintiff's CPA claim. Id.

Reliant asserts that Daigle misled Reliant to believe that the AGC project was terminated and that Daigle was no longer performing consulting services for AGC. Compl. (Doc. No. 7-1, ¶¶ 30, 33). Contrary to these representations, Daigle resumed its work with AGC but through another staffing company. Id. ¶¶ 33, 70-71. Thus, Daigle made misrepresentations to avoid performing its obligations under the terms of the Agreement and interfered with Reliant's business relationships. See Woodbury, 2017 WL 2389522, at *3. Accordingly, the court finds that Reliant has sufficiently demonstrated that Daigle's conduct violated the CPA, and therefore, it recommends that the district judge enter default judgment against Daigle on Reliant's CPA claim.

**III.  Damages[3]**

In the case of defaulting defendants, "the amount of damages are not necessarily established as a result of the default." Int'l Union of Operating Eng'rs, Local 4 v. Stanley Excavation, 243 F.R.D. 25, 27 (D. Me. 2007) (quotation omitted). Rather, allegations of damages "must be established by proof unless the damages involve a sum certain or are for

---

[3] The court did not hold a hearing on damages.  Rule 55(b)(2) "makes an evidentiary hearing an available tool, not a prerequisite, to the determination of a damage award." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 436 (1st Cir. 2015).

liquidated damages." Id. (quotation omitted).  Where a party

seeks to recover both a sum certain and damages that require

judicial determination under Rule 55(b)(2), "the entire matter,

including the sum certain, must be determined under Rule

55(b)(2)." Id. at 27 n.5 (citing Conetta v. Nat'l Hair Care

Ctrs., Inc., 186 F.R.D. 262, 268 (D.R.I.1999) ("A case is either

for a 'sum certain' or not. A party must choose one of the two

procedures offered by Fed. R. Civ. P. 55(b) . . . ."),

aff'd, 236 F.3d 67 (1st Cir.2001)).  The reasonableness of

attorneys' fees and treble damages under the CPA require

judicial review.  Id.; see also Phils HVAC, 2021 WL 4594925, at

*2; Merullo, 2012 WL 832832, at *3 (applying Rule 55(b)(2) and

requiring proof of damages under RSA 358-A).

Reliant seeks to recover: (1) liquidated damages under the

Agreement; (2) treble damages under RSA 358-A; and (3)

attorneys' fees and costs under the Agreement and/or RSA 358-A.

Accordingly, the court must analyze Reliant's request for

damages under Rule 55(b)(2).

A. Contractual Liquidated Damages

A liquidated damages clause is valid when: "(1) the damages

anticipated as a result of the breach are uncertain in amount or

difficult to prove; (2) the parties intended to liquidate

damages in advance; and (3) the amount agreed upon is reasonable

and not greatly disproportionate to the presumable loss or injury." Holloway Auto. Group v. Lucic, 163 N.H. 6, 9-10 (2011). To determine whether the amount is reasonable, the court considers "whether the amount was a reasonable *estimate* of difficult-to-ascertain damages at the time the parties agreed to it." Id. (emphasis in original) (quotation omitted). In addition, the court asks whether "actual damages are easily ascertainable after a breach." Id. (quotation omitted). If the damages are easily ascertainable, the court must then determine whether the stipulated amount is "unreasonable and grossly disproportionate to the actual damages from a breach." Id. (quotation omitted).

Here, the Agreement provides that if Daigle violates any part of the restrictive covenant provision, Daigle "will pay to Reliant, for each occurrence, the sum of $35,000.00 as liquidated damages." Agreement, Ex. 1 to Aff. of James P. Harris, (Doc. No. 19-3, § 3). The record demonstrates that the parties intended to liquidate damages in advance, and even assuming damages would be ascertainable, the court finds that the amount of $35,000 is reasonable given Daigle's hourly rate of $100.00 and the fact that Daigle performed only two weeks of work, when the contract contemplated at least one year of work. See also Notice of Removal (Doc. No. 1, at 5) (estimating 2,000 hours of work by Daigle and gross revenue between $333,000.00

and $400,000.00).  Accordingly, the court finds that the
liquidated damages provision is valid and enforceable.  Based on
Daigle's violation of the restrictive covenant provision, the
court recommends that Reliant be awarded liquidated damages in
the amount of $35,000.00.

     B. Treble Damages Under the RSA 358-A

     Any person injured by a CPA violation "may bring an action
for damages . . . ." N.H. Rev. Stat. Ann. § 358-A:10.  A
prevailing plaintiff is entitled to recover "the amount of
actual damages or $1,000, whichever is greater." Id.  If the
court finds that the violation was a "willful or knowing
violation of [the CPA], it shall award as much as 3 times, but
not less than 2 times, such amount." Id.

     Reliant submits that Daigle's conduct was a willful and
knowing violation of the CPA because Daigle misled Reliant to
believe that Daigle was no longer providing services to AGC on
the project.  See Compl. (Doc. No. 7-1, ¶¶ 70-71).  Yet, shortly
after being directed to stop work for AGC, Daigle recommenced
its work for AGC through another staffing company, performing
the same work on the same project.  Harris Aff. (Doc. No. 19-2,
¶¶ 10-11).  The court is persuaded that the admitted conduct of
Daigle supports a willful violation of the CPA.  Accordingly,
the court recommends that the district judge award Reliant
treble damages in the total amount of $105,000.00.

## C. Attorney's Fees and Costs

Reliant is entitled to an award of attorneys' fees and costs under the express terms of the parties' Agreement.  See Agreement, Ex. 1 to Aff. Of James P. Harris ("Harris Aff.") (Doc. No. 19-3, § 12) ("[Daigle] agrees to pay all costs and expenses (including reasonable attorneys' fees) incurred by Reliant in connection with any dispute between the parties in connection with Timesheets, Invoices, Services, or this Agreement."); see also N.H. Rev. Stat. Ann. § 358-A:10 (permitting the court to award reasonable attorneys' fees).

"The lodestar approach is the method of choice for calculating fee awards." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015) (citations omitted).  Under this approach, a district court first "calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'" Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  The court then determines "a reasonable hourly rate or rates — a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." Id. (citation omitted).  Multiplying the results of these two

inquiries yields the lodestar amount.  Id.  The court may then adjust the potential award based on factors not captured in the lodestar calculation.  See Hensley, 461 U.S. at 434 ; Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). "The party seeking the [fee] award has the burden of producing materials that support the request." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011) (citing Hensley, 461 U.S. at 433).

In support of its request for fees, Reliant's counsel submitted a copy of its invoices for the matter.  See Ex. 3 to the Harris Aff. (Doc. No. 19-5).  The court reviewed these invoices and is satisfied that the time expended by Reliant's counsel in preparing the complaint and the motion for default judgment was reasonable.  The time entries appear to relate to necessary work and do not appear duplicative.  In addition, these tasks were primarily performed by an associate at a prevailing rate.  Harris Aff. (Doc. No. 19-2, ¶ 13).  To ensure that the fee award concerns only work product related to Daigle, Reliant's counsel proposes an award of 50% of time and fees expended on the complaint and an award for all time and fees expended in connection with the default judgment motion. Finally, as to costs, Reliant seeks reimbursement of 50% of the filing fee of the complaint and all costs associated with serving Daigle.  In sum, the court finds Reliant's proposal for

fees and costs to be reasonable and recommends that the district judge award Reliant fees and costs in the amount of $4,223.50.

## CONCLUSION

For the foregoing reasons, the court recommends that the district judge: (1) grant Reliant's motion for default judgment (Doc. No. 19) as to its claims for breach of contract (Count II) and violation of RSA 358-A (Count VI); (2) award Reliant damages in the amount of $109,404.80; and (3) dismiss the remaining claims against Daigle (Counts IV and V) as moot.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

May 23, 2023

cc:   Counsel of record