UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Reliant Life Sciences, LLC

    v.      Civil No. 22-cv-137-SE
        Opinion No. 2024 DNH 005

AGC Biologics, Inc. and
Daigle Computer Systems, Inc.

## ORDER

New Hampshire's Consumer Protection Act ("CPA") authorizes private actions to recover liquidated damages of $1,000 or "actual damages," whichever is greater, for a violation of the statute. N.H. Rev. Stat. Ann. ("RSA") § 358-A:10, I. The CPA also provides for treble damages when the violation is "willful or knowing." Id. Plaintiff Reliant Life Sciences, LLC ("Reliant") has filed a renewed motion for default judgment on its CPA claim against Daigle Computer Systems, Inc. ("Daigle") seeking trebled, actual damages of $269,765.76. That sum is derived from Reliant's calculation of its lost profits due to Daigle's breach of its subcontractor agreement with Reliant, under which Daigle agreed to consult for one of Reliant's clients.

The court denies Reliant's motion in part, as it has not proven its actual damages under the CPA. Instead, the court awards Reliant $35,000 in liquidated damages according to the contract between it and Daigle, as well as $1,000 in liquidated damages provided by the CPA. The CPA damage award is trebled by the court's finding that Daigle acted willfully and knowingly. The court also awards Reliant additional attorneys' fees.[1]

---

[1] The court previously adopted the Report and Recommendation approving Reliant's attorneys' fees and costs, doc. no. 23, but Reliant has incurred additional fees and costs since that time. As explained below, the court finds those amounts to be reasonable, and they are owed to Reliant under both the CPA and its subcontractor agreement with Daigle. See doc. no. 20 at 17 (R&R finding the same).

Background

On July 31, 2023, the court acted on the Report and Recommendation of Magistrate Judge Andrea K. Johnstone and granted Reliant's motion for default judgment on its claims against Daigle for breach of contract and a violation of the CPA. The court also awarded Reliant its attorneys' fees and costs and dismissed the remaining claims against Daigle as moot. However, after receiving supplemental briefing from Reliant on the issue of damages, the court did not approve the recommended award of $105,000, as it relied on the mistaken premise that RSA 358-A:10, I authorizes trebling the liquidated damages provided for in the contract between Reliant and Daigle. Instead, the court granted Reliant's request to present evidence of its actual damages under the CPA and ordered it to file a renewed motion for default judgment. Reliant filed its motion with accompanying exhibits on August 11, 2023, and the court held a hearing on January 19, 2024.

Standard of Review

Fed. R. Civ. P. 55 establishes two processes for awarding damages by default judgment. Rule 55(b)(1) allows damages to be awarded against a defaulting party on the pleadings when the claim is for a "sum certain," meaning "there is no doubt as to the amount to which a plaintiff is entitled as result of the defendant's default." KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). "The classic example is an enforceable liquidated damages clause in a contract." Id. at 20. However, if the claimed sum is not certain, the court proceeds under Rule 55(b)(2) and receives evidence on the issue of damages. Id. "[A] plaintiff must prove the damages it claims" under Rule 55(b)(2), Equip. E., LLC v. Corbell Dev., LLC, No. 20-CV-274-JD, 2020 WL 5549102, at *1 (D.N.H. Sept. 16, 2020), and a claim for lost profits must be proven

2

with "reasonable certainty," Boyle v. City of Portsmouth, 172 N.H. 781, 792 (2020). "[D]amages cannot be awarded for 'speculative losses.'" Boyle, 172 N.H. at 792.

Discussion

Because the court already decided the issue of Daigle's liability when it granted Reliant's first motion for default judgment, all that is left for the court's determination is the question of the total amount of damages due to Reliant.

Although Reliant avers that its claimed damages are a sum certain and that its motion is properly bought under Rule 55(b)(1), that assertion is incorrect. Reliant seeks actual damages for its lost profits. As the court previously held in response to Reliant's argument that its actual damages are the liquidated damages provided in the subcontractor agreement, "Liquidated damages and actual damages are distinct as a matter of New Hampshire law." Doc. no. 21 at 2 (quotations omitted) (citing Orr v. Goodwin, 157 N.H. 511, 516-18 (2008)). Reliant also seeks treble damages under RSA 358-A:10, I, arguing that the evidence establishes that Daigle's violation of the CPA was knowing and willful. Inherent in Reliant's motion is an acknowledgment that its damages are not certain, as they depend on findings made by the court based on evidence put forth by Reliant. And, Reliant seeks an award of attorneys' fees, which also must be proven. Doc. no. 20 at 2 n.1 (citing Trustees of Sheet Metal Workers Loc. Union No. 17 Ins. Fund v. Phils HVAC, Inc., No. 21-CV-10680-ADB, 2021 WL 4594925, at *2 (D. Mass. Oct. 6, 2021)). For these reasons, Reliant's claimed damages are not for a sum certain, and the court analyzes Reliant's motion under the default judgment standard in Rule 55(b)(2).

3

I. <u>Lost Profits</u>

In support of its application for actual damages under the CPA, Reliant claims that, due to Daigle's breach, it lost profits of $89,921.92. Reliant previously described its actual damages as "the net profits lost on every day that Daigle worked directly for Reliant's customer." Doc. no. 22 at 5. It now takes the more nebulous position that its actual damages are its anticipated net profits, determined by the number of annual hours worked by the "typical contractor," multiplied by the expectation that Daigle would work for at least one year, deducting compensation to Daigle and other anticipated costs to Reliant. Doc. no. 24 at 2-3. Reliant's evidence is 1) the $165 per hour rate that Reliant's client agreed to pay it in exchange for Daigle's services; 2) the $100 per hour rate that Reliant agreed to pay Daigle for its services, as well as other costs that Reliant would have incurred over the year-long contract; 3) the independent subcontractor agreement and statement of work, signed by Reliant and Daigle, estimating that Daigle's consulting work for Reliant's client would last one year; and 4) the declaration of Reliant's Chief Operating Officer, Mark Castellarin, that "a typical consultant bills 2,000 hours in a year," doc. no. 24-2 at 2. Considering these pieces of evidence together, Reliant asserts that its net profits would have been its gross revenue (2,000 hours times $165 per hour) minus compensation to Daigle (2,000 hours times $100 per hour) and other expenses associated with the contract, for a total of $89,921.92.

Although the court finds that Reliant has established by a reasonable certainty the relevant rates that would have determined the amount of its profit, it has not met its burden regarding the other essential part of the lost profits determination: the number of hours that Daigle would have worked under the subcontractor agreement. See <u>P.C. Hoag & Co. v. Man Lift Mfg., Co.</u>, No. 15-CV-498-JL, 2018 WL 4298343, at *9 (D.N.H. Jan. 10, 2018), <u>R&R approved</u>,

No. 15-CV-498-JL (D.N.H. Feb. 1, 2018) (specific evidence offered by plaintiff on default judgment "barely pushed its 1,000-hour-per-year estimate beyond the realm of mere speculation"). In fact, the evidence offered by Reliant in this regard is scant, speculative, and indefinite.

First, Reliant argues that because the statement of work signed by it and Daigle "estimated" that the engagement would last one year, doc. no. 24-3 at 6, the lost profits calculation should assume that Daigle would have performed for one year. Reliant does not offer any evidence as to why the nature of Daigle's work makes it probable that its services would have, in fact, been required for one year. More importantly, Reliant does not address the fact that its former client, who was hiring Daigle (through Reliant), was not a party to the statement of work. Indeed, the independent subcontractor agreement explicitly acknowledges that Reliant's client "may cancel an assignment with or without cause, in its sole discretion," which would "automatically" amend the statement of work "to reflect an end date commensurate with the effective date of the client's cancellation." Id. Therefore, even though Reliant and Daigle both estimated that Daigle's work would last one year, Reliant has not produced any evidence that its former client also had that understanding, let alone a signed instrument proving the same.[2] See, e.g., Mentis Sciences, Inc. v. Pittsburgh Networks, LLC, 173 N.H. 584, 590 (2020) (explaining that plaintiff's "claimed lost profit damages . . . were not inherent in the contract [at issue]" because "[t]he plaintiff's profits . . . relied on actions and contingencies that would have taken

---

[2] Castellarin's declaration asserts that Daigle's consulting engagement "could have lasted even longer [than one year], based on the communications between Reliant and [its former client]." Doc. no. 24-2 at 3. Reliant does not cite to, quote, or attach to its motion any communications with its former client, and therefore the court is unable to evaluate the basis for Castellarin's assertion. Even so, his statement only casts further doubt on Reliant's position regarding the projected duration of Daigle's engagement.

place outside of its contract with the defendant"). Without some proof that there would have been demand for Daigle's services from Reliant's former client for one year, the court cannot calculate actual damages based on that assumption.

The evidence is similarly lacking regarding Reliant's assertion that Daigle would have worked 2,000 hours over the course of the year. For this proposition, Reliant offers only Castellarin's declaration that "a typical consultant bills 2,000 hours in a year." Doc. no. 24-2 at 3. This statement has little relevance to the question of how many hours Reliant expected Daigle to bill, which again may have depended upon the nature of his work, client demands, and other considerations specific to this case that Reliant does not address. See P.C. Hoag & Co., 2018 WL 4298343, at *9. Reliant does not even address how Daigle is comparable to a purportedly "typical consultant." Moreover, the independent subcontractor agreement makes clear that Reliant and Daigle anticipated that Daigle would be an hourly employee, compensated only for the hours that he actually worked and that were invoiced to and approved by Reliant's client. Doc. no. 24-3 at 1. The evidence Reliant has offered does not prove with reasonable certainty that Daigle would have worked 2,000 hours had he not breached his contract with Reliant. When the court suggested as much at the evidentiary hearing, Reliant's counsel made an offer of proof that simply repeated the content of Castellarin's declaration. That offer of proof, like the declaration, is insufficient.

The paucity of evidence Reliant offers to prove its actual damages is particularly notable because the basis for Reliant's claim (which the court credits) is that Daigle acted willfully and knowingly by continuing to consult for Reliant's former client after breaching its contract with Reliant. Necessarily, then, Reliant could have ascertained the number of hours that Daigle actually consulted for Reliant's former client. In other words, these facts are discoverable.

Reliant's counsel conceded at the evidentiary hearing that it could have issued third-party subpoenas to Reliant's former client and offered no persuasive explanation for its decision to forgo that effort. Instead, Reliant requested an opportunity to gather additional evidence and file a third motion for default judgment. Given the procedural posture of this case, the court declines to grant that request. Regardless, on the evidence Reliant has put forth, the court finds that it has failed to prove with reasonable certainty that it lost profits of $89,921,92.

II. <u>Liquidated Damages</u>

Although Reliant has not proven its actual damages under the CPA, the court awards Reliant liquidated damages. The independent subcontractor agreement provides for the lion's share of those damages. Doc. no. 24-3. Section 3 of the agreement, entitled "Restrictive Covenants," states that if Daigle "violates any part of [the covenant not to deal directly with Reliant's clients in order to deprive Reliant the benefit of the contract], it will pay to Reliant, for each occurrence, the sum of $35,000.00 as liquidated damages." <u>Id.</u> at 2. Reliant and Daigle determined that liquidated damages were warranted because they "agree[d] that the damages that Reliant may suffer as a result of [Daigle's] breach of this paragraph are difficult to quantify" and that liquidated damages are "a reasonable estimate of the harm Reliant would suffer." <u>Id.</u> The court previously adopted the R&R as to the enforceability of the restrictive covenant and Daigle's liability under it, and the court awards Reliant liquidated contractual damages of $35,000 based on that analysis. <u>See</u> doc. no. 20 at 14-16 (R&R to enforce the restrictive covenant). At the hearing, Reliant's counsel argued that $35,000 is insufficient to compensate Reliant for Daigle's breach. Given that Reliant freely agreed to the liquidated damages provision

in its contract with Daigle, including the express language on the adequacy of $35,000 in anticipation of this particular breach, the court does not find its argument persuasive.

The R&R also evaluated Reliant's claim for treble damages under the CPA. It found treble damages warranted by Daigle's conduct. Although the court previously declined to adopt the magistrate's recommendation trebling Reliant's <u>contractual</u> liquidated damages, the court agrees that treble damages are warranted. In the absence of actual damages, the CPA provides that the plaintiff should recover $1,000.00. Therefore, the court awards Reliant trebled statutory liquidated damages of $3,000.00.

### III.     Attorneys' Fees and Costs

The court previously adopted the magistrate's recommendation to award Reliant its attorneys' fees. Doc. no. 23 at 1. Since then, Reliant has incurred additional fees related to its motion for default judgment, and it now moves for an award of that total sum. Doc. no. 24 at 1. In support of its motion for fees, Reliant submitted detailed invoices and an affidavit from its counsel explaining them. Doc. nos. 24-5 & 24-6. Based on those submissions, the court finds that Reliant's fee request is reasonable and awards it $10,061.50 in total for fees, plus costs in the amount of $181.30.

### Conclusion

For the foregoing reasons, the court awards plaintiff $48,242.80, which includes:

A. Liquidated contractual damages of $35,000.00;

B. Liquidated statutory damages of $3,000.00;

C. Attorneys' fees of $10,061.50, and;

D. Costs of $181.30.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

January 24, 2024

cc: Counsel of Record.